UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **SHAJI BROWN** | * | **CIVIL ACTION NO. 21-843** |
| | * | |
| **versus** | * | **SECTION: I** |
| | * | **HON. LANCE M. AFRICK** |
| **ALABAMA GREAT SOUTHERN** | * | |
| **RAILROAD COMPANY** | * | **MAGISTRATE NO. 5** |
| | * | **MAG. JUDGE MICHAEL B. NORTH** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF THE ALABAMA GREAT SOUTHERN RAILROAD COMPANY'S MOTION IN LIMINE REGARDING THE EXPERT OPINIONS OF <u>PLAINTIFF'S ECONOMIC EXPERT, DR. RANDOLPH RICE</u>**

Defendant, Alabama Great Southern Railroad Company ("AGS), respectfully moves this Honorable Court *in limine* for an Order excluding the opinions and report of plaintiff's purported economic expert, Dr. G. Randolph Rice ("Rice") and, if excluded, preclude plaintiff from offering expert opinions regarding his alleged economic losses as more fully set forth and supported below.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Shaji Brown ("Brown") was employed by AGS as a Conductor. On June 28, 2020, Brown was working as a member of Train Crew A66 at Oliver Yard in New Orleans. Brown's assignment on June 28, 2020 was to bleed off the air from the brakes of cars that were sitting on a track called West Yard 7 ("Track WY7"). At the same time, a separate train crew, Crew A67, was operating at the north end of the West Yard. Train crew A67 was assigned to push cars onto tracks into the outbound yard.

Brown communicated multiple times with Crew A67 on June 28, 2020 prior to the alleged incident. Before beginning his assigned task of bleeding off air from the brakes of cars, Brown contacted the Locomotive Engineer on his own train – the A66 -- and arranged "three step

protection," which would prevent *only his own train* from initiating movement while he was working.[1]  However, Brown failed to notify Train Crew A67 that he was working on Track WY7, which would have prevented that crew from kicking cars into West Yard 7.  As a direct result of Brown's failure to communicate with Train Crew A67, the A67 crew pushed or "kicked" at least two cars into Track WY7, causing the cars that were already on that track, plus the attached locomotive, to move unexpectedly. Brown claims he was injured during this movement.

Brown brought a claim for negligence against AGS under the Federal Employer's Liability Act ["FELA"], 45 U.S.C. § 51, *et seq*. and also alleges that he was discharged in retaliation for reporting the incident and has filed a claim under the Federal Railroad Safety Act ["FRSA"], 49 U.S.C. § 20109, *et seq*.  The FELA is the exclusive remedy of a railroad employee against her railroad employer for personal injury to the exclusion of a state's substantive law. *Erie R.R. Co. v. Winfield,* 244 U.S. 170, 172 (1917).

Brown claims to have sustained injuries to his cervical and lumbar spine as a result of the incident.[2]  In addition to his income from AGS prior to the incident, Brown received VA Benefits during the last ten years.[3]  Following the alleged incident and his termination from AGS, Brown was employed by US Express.[4] This employment was supported by Brown with payroll records. During his deposition, Brown stated that he was driving trucks for US Express and works between forty (40) and sixty (60) hours a week.[5]  Based on plaintiff's own representations, there can be no dispute regarding Brown's ability to obtain employment following the incident. Brown has not

---

[1] Three-Step Protection is a form of protection which allows transportation employees to foul equipment like rails cars and locomotives to perform duties with an understanding the equipment will not be moved. Locomotive engineers apply the locomotive brakes, center their reverser (neutral) and turn off their generator field switch to prevent movement while the field employee is between equipment.
[2] *See* Ex. A, Brown's Answer to Interrogatory No. 3.
[3] *See* Ex. A, Brown's Answer to Interrogatory No. 13
[4] *See* Ex. A, Brown's Answer to Interrogatory No. 14.
[5] *See* Ex. B, Excerpts of Brown's October 28, 2021 deposition, p.119:8-121:3.

introduced expert evidence that he is limited to specific work due to his injuries from the incident.

I.     *Plaintiff's Purported Expert(s)*

On 17 March 2022, in accordance with the Court's scheduling order [Rec. Doc. 30] and Fed. Rule of Civ. P. 26(a)(2)(A) and 26(a)(2)(C), plaintiff identified his purported expert witnesses.[6] Plaintiff propounded correspondence from G. Randolph Rice, PH.D ("Rice") to plaintiff's counsel, constituting Rice's expert report under FRCP 26(a)(2)(B) .[7] In addition to Rice, plaintiff identified two of Brown's treating physicians, Dr. Barnett Johnston ("Johnston") and Dr. Lacie Alfonso ("Alfonso").[8] Brown did not identify any additional experts prior to the March 17, 2020 expert deadline set forth in the Court's scheduling order [Rec. Doc. 30]. Specifically, Brown did not identify a vocational rehabilitation expert or life care planner. The discovery deadline accrued on 29 April 2022. *See* Rec. Doc. 30.

The Rice Report's reliance materials do not include Brown's discovery responses, Brown's October 28, 2021 deposition, other witness depositions, Brown's expert disclosures, nor any of Brown's medical records or reports.[9] Rice states that the work-life expectancy was based on counsel's request.[10] Rice provides several figures reflecting earning capacity, diminution of earnings, and future discounted wage losses.[11] For example, Rice opines that the discounted/present value of Mr. Brown's after tax earning capacity (absent injury) is $997,474.00.[12] In calculating the diminution of earnings through the remainder of Brown's work-life expectancy and net future discounted wage losses – Rice provides an "example" of the

---

[6] *See* Ex. C, Correspondence from Joseph M. Miller, dated March 17, 2022.
[7] *See* Ex. D, Correspondence from G. Randolph Rice, dated March 15, 2022 (the "Rice Report"). Plaintiff also produced Rice's CV and fee schedule.
[8] *See* Ex. C, Correspondence from Joseph M. Miller, dated March 17, 2022.
[9] Ex. D, Rice Report p.1.
[10] *Id.*
[11] *Id.* at 2.
[12] *Id.*

3

calculation assuming a circumstance in which Brown can earn $15 per hour for 40 hours per week.[13]  Based on this "example," Rice states: "[t]hus, the net future discounted wage 'losses' *per the circumstances here* are $327,439.00 (i.e., $997,474.00 less $670,035.00), and adding our past estimate of $60,244.00 gives an overall value of $387,683.00."[14]  Rice also provides a figure for the present value of fringe benefits and employer contributions to Mr. Brown's retirement plan.[15]

Rice does not set forth a clear methodology on how these amounts were calculated, nor does he clearly identify the source of data used to calculate the figure.  Most importantly, Rice's key calculation – regarding net future discounted wage 'losses' – is improperly premised on an "example" figure for Brown's current earning capacity.   This figure is unsupported by expert testimony regarding Brown's ability to obtain employment after the incident.

## **LEGAL STANDARD**

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *Harkness v. Bauhaus U.S.A., Inc., No.* 3:13-cv-129, 2015 U.S. Dist. LEXIS 17926, 2015 WL 631512, at *1 (N.D. Miss. Feb. 13, 2015) (quotation marks and citations omitted).  Indeed, the "most common" function of a motion in limine is to exclude "prejudicial or inadmissible evidence." *Bond Pharmacy, Inc. v. Anazaohealth Corp.*, No. 3:11-cv-58, 2012 U.S. Dist. LEXIS 103373, at *6-7 (S.D. Miss. July 25, 2012) (citing *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 & n.1 (5th Cir. 1977)).  "The court has broad discretion in disposing of a motion in limine." *Dixon v. La. Dep't of Envtl. Quality*, No. 05-1303, 2008 U.S. Dist. LEXIS 17302, at *2 (M.D. La. Mar. 6, 2008).

---

[13] *Id.*
[14] *Id.* (Emphasis Added).
[15] *Id.* at 3.

4

4657530-1

Federal Rule of Evidence ("FRE") 702 governs the admissibility of expert testimony. The Supreme Court's holdings in *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 591 (1993) and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999) are codified in FRE 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Thus, the witness must be qualified as an expert, and his opinions must be both reliable and relevant. *See* Fed. R. Evid. 702; *See United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

In *Daubert,* the United States Supreme Court set a standard to assist trial courts in evaluating the admissibility of expert testimony and required the district courts to perform a "gatekeeping" function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 591 (1993); *see also Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013). The *Daubert* standard requires that the court find an expert's underlying principles and methodology to be sufficiently reliable. *See e.g. Jacob v. Caesars Entm't, Inc.*, No. 05-0805, 2007 U.S. Dist. LEXIS 12393, at *11-12 (E.D. La. Feb. 21, 2007) (opinions of qualified experts that are not based on sufficient facts or data known to exist employ unreliable methodology and must be excluded). It is well established that "courts need not admit testimony that is based purely on the *ipse dixit* of the expert." *Diamond Offshore Co. v. Survival Sys. Int'l*, 2013 U.S. Dist. LEXIS 11538, at *6 (S.D. Tex. 2013) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

To assess reliability, the Court considers whether the reasoning and methodology underlying the expert's testimony is "valid and can be reliably applied to the facts of the case." *Id*.

5

This "analysis applies to all aspects of an expert's testimony," including the "methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (internal quotation marks and citation omitted). If the opinion is based on mere "subjective belief or unsupported speculation," then the Court should exclude it. *Daubert*, 509 U.S. at 590; se*e also Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000) (Since *Daubert* …parties relying on expert evidence have had notice of the exacting standards of reliability such evidence must meet." (emphasis added)). The party offering the expert testimony bears the burden of establishing that the expert's findings and conclusions are reliable. *See Sandifer v. Hoyt Archery, Inc.*, 907 F.3d 802, 808 (5th Cir. 2018) (*quoting Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)).

The Court also evaluates whether the testimony is relevant. In assessing relevance, the Court considers whether the expert's "reasoning or methodology 'fits' the facts of the case." *Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547, 551 (E.D. La. 2015); *see also Daubert*, 509 U.S. at 591 (discussing Rule 702's relevancy requirement in terms of "fit"). In other words, the expert opinion "must 'help the trier of fact to understand the evidence or to determine a fact in issue.'" *Sandifer*, 907 F.3d at 809 (quoting Fed. R. Evid. 702).

## ARGUMENT

In *Mayne v. Omega Protein, Inc.*, the Fifth Circuit agreed that the District Court erred in relying on the calculation of Dr. Randy Rice, the plaintiff's economic expert because the calculations were based on assumptions of earnings given to Rice by plaintiff's attorney. 370 Fed. Appx. 510, 517-518 (5th Circuit 2010) (vacating the damage award and remanding). In *Mayne,* Rice's calculations incorporated assumed annualized earnings that were not supported by the plaintiff's tax returns. *Id.* The Fifth Circuit noted "[d]espite repeated questioning from [plaintiff's]

6

4657530-1

attorney, Rice declined to state that the amount of $25,000 was reasonable." *Id.* Importantly, the Fifth Circuit acknowledged that "[t]here is no other testimony or evidence that [plaintiff's] earning was or would become $25,000 per year." In vacating the damage award, the court noted "[a]n award for damages cannot stand when the evidence to support it is speculative or purely conjectural." *Id.* (*citing Masinter v. Tenneco Oil Co.,* 929 F.2d 191, 194 (5th Cir. 1991). As discussed below, Rice's incorporation of $15 per hour/40 hours a week for Brown's post incident earnings – whether as an "example" or otherwise – is speculative and purely conjectural.

## I.     Dr. Rice's opinions are unreliable

Rice's opinions regarding Brown's future wage losses are neither based on sufficient facts or data nor the product of reliable principles and methods. In formulating his opinions Rice failed to consider key facts and evidence known to exist. As set forth in the identified reliance materials, Rice failed to consider Brown's discovery responses, Brown's October 28, 2021 deposition, other witness depositions, Brown's expert disclosures, and Brown's medical reports. This evidence directly pertains to the opinions set forth in the Rice Report.

Brown's discovery responses and his deposition testimony unequivocally apply to his post incident employability. Brown's discovery responses state that he received VA Benefits during the last ten years. These benefits are not included in Brown's opinion. Brown testified in his deposition that he was working with US Express and works between forty (40) and sixty (60) hours a week. Rice *assumed* $15 per hour/40 hours a week with no reference to Brown's testimony or his paystubs. Brown's FRCP 26(a)(2)(C), disclosures for both Johnston and Alfonso (the only identified medical experts) provide: "[c]oncerning his opinions regarding work and physical restrictions, Mr. Brown will need a present condition evaluation."[16] Brown's own medical

---

[16] *See* Ex. C, Correspondence from Joseph M. Miller, dated March 17, 2022 (emphasis added).

7

4657530-1

providers are unable to offer any opinions regarding his work or physical restrictions. The foregoing evidence directly pertains to Rice's opinions but was not considered by him.

Even if Rice had reviewed the above information, his opinions would still be unreliable because they are not based on sufficient facts and are not the product of reliable principals or methods. Rice's report uses $15 per hour/40 hours a week as an "example." Rice's report provides no explanation for this variable or why it was included. There is no suggestion that this amount reflects Brown's highest income or otherwise reflects his post-incident employability. Instead, Rice appears to offer this figure simply as an illustration or example of what Brown's theoretical future wage losses could be.

Furthermore, the $15 per hour/40 hours a week example is not based on the opinion of a vocational rehabilitation expert or any evidence regarding what Brown could earn after the incident, rendering any resulting opinion regarding future wage loss speculative. Rice's example does not reflect medical findings regarding his "work or physical restrictions" because Brown's treating doctors (through counsel) acknowledged that they are unable to offer such an opinion without a present condition evaluation. Thus, $15 per hour/40 hours a week has no basis in evidence and is not the product of a reliable methodology. Inclusion of this "example" renders Rice's opinions regarding future wage loss speculative, unreliable, and/or hypothetical. Such unreliable testimony is highly prejudicial to AGS and should not be presented to the jury.

In calculating future wage loss, Rice utilized a work-life expectancy of 65 *based on counsel's request*. This assumption directly parallels the facts in *Mayne*. Rice does not provide or cite any authority for his assumption of work-life expectancy. AGS's own economic expert cites clear authority setting forth the appropriate work-life expectancy, evidencing only 21 more years

8

of employment (as opposed to Rice's 24.57 years).[17] Again, Rice failed to rely on or show adequate methodology in reaching his unreliable opinions.

The Rice Report further provides insufficient methodology regarding the calculation of fringe benefits and employer contributions to Brown's retirement plan. Absent a clear methodology evidencing Rice's calculation of these figures, the Court – and AGS – are unable to evaluate or verify the reliability of these opinions

## II.     *Rice's Opinions are Irrelevant.*

Even assuming Rice's opinions are reliable, this Court should still exclude Rice's opinions and report because they are not relevant. Rice's reasoning and methodology regarding future wage losses do not fit this case. Brown has not offered any evidence, from a vocational rehabilitation expert, life care planner, or medical practitioner, regarding his claimed disability or ability to earn money. AGS maintains that Brown could seek higher employment regardless of the fact that he was able to obtain employment at $15 per hour/40 hours a week. Any calculation of future wage loss relying on $15 per hour/40 hours a week as post-incident employment is speculative and has no bearing on the facts in this case. Brown cannot establish his achievable or reasonable post-incident earning capacity or potential. Brown's doctors are unable to opine on his work or physical restrictions without a present condition evaluation. As discovery has now closed, Brown is precluded from now seeking a present condition evaluation and cannot establish present disability that may limit his ability to earn money. Rice's speculative opinions are not based on facts or evidence in this case and are irrelevant. As such, Rice's opinions will not help the trier of fact to understand the evidence or to determine a fact in issue and should be excluded.

---

[17] Ex. E, Report of Kenneth J. Boudreaux, Ph.D.

### III. *If the Court excludes the Opinions and Report of Rice, plaintiff should be precluded from offering evidence of economic loss.*

Without Rice's report, any evidence of plaintiff's alleged economic losses is not in proper form under the FELA and any lay opinion on damages must be excluded. AGS moves to preclude plaintiff from introducing evidence of economic losses unless such evidence is presented in proper form under the FELA and through a competent witness. AGS further moves to preclude plaintiff from offering lay opinion, including any evidence or argument based on or arising out of lay opinions, to support a contention regarding plaintiff's work capacities or work-life expectancy, or any calculation of damages or alleged wage loss.

Under the FELA, damages for loss of future earnings and future medical expenses must be reduced to present value. *O'Byrne v. St. Louis Sw. Ry.* Co., 632 F.2d 1285, 1286 (5th Cir. 1980). In the Fifth Circuit, evidence of the amount of future damages is reduced to present value using the four-step Culver II approach by (1) estimating the loss of work life resulting from the injury or death, (2) calculating the lost income stream, (3) computing the total damage, and (4) discounting that amount to its present value. *Culver v. Slater Boat Co*., 722 F.2d 114, 120 (5th Cir. 1983); *see St. Louis Southwestern Ry. Co. v. Dickerson*, 470 U.S. 409, 412 (1985) ("failure to instruct the jury that present value is the proper measure of a damages award is error").

The discount rate applied in the fourth step "represents the estimated market interest rate, adjusted for the effect of any income tax, and then offset by the estimated rate of general future price inflation." *Id*. at 122. The discount rate "can either be reached by stipulation or by introducing competing expert opinions." *Taylor v. B&J Martin, Inc.*, No. 18-8941, 2020 U.S. Dist. LEXIS 41339, at *8-9 (E.D. La. Feb. 10, 2020) (Zainey, J.); s*ee also Masinter v. Tenneco Oil Co*., 929 F.2d 191, 195 (5th Cir. 1991) (The Fifth Circuit "did not mandate any specific discount rate. Instead we explained that parties may introduce expert opinion concerning the appropriate rate.").

As explained *supra*, plaintiff's economic expert should be disqualified and excluded.  However, with or without Rice, plaintiff has no expert witnesses to testify regarding his work capacities or work-life expectancy, his appropriate net wages, present value of any future economic damages, including medical expenses, damages, or any proper calculation of economic losses.

Such evidence cannot be introduced through a lay witness.  Federal Rule of Evidence 702 prohibits a witness or plaintiff from expressing an opinion unless "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702.  Generally, a witness not testifying as an expert may not give testimony in the form of opinions or inferences.  This rule is subject to the limited exception of Federal Rule of Evidence 701, which permits a lay witness to express an opinion only in those rare instances when the opinion is "[r]ationally based on the witness's perception . . . [and] helpful to a clear understanding of the witness's testimony or to determining a fact in issue."  Fed. R. Evid. 701.  Plaintiff has identified no witnesses who have the "knowledge, skill, experience, training, or education" to opine on the appropriate discount rate to apply to plaintiff's claims for future damages, his earning capacity, work or physical restrictions, work life expectancy, or appropriate net wages and, as such, he should not be permitted to introduce evidence of future economic damages.

AGS therefore moves to preclude plaintiff from introducing evidence of economic losses not presented in proper FELA form and through a competent witness, and to preclude plaintiff from offering lay opinion, and any evidence or argument based on or arising out of lay opinions, to support any contention regarding plaintiff's work-life expectancy, or any calculation of damages or alleged wage loss.

## **CONCLUSION**

AGS respectfully requests that the Court grant this motion and prevent plaintiff's economic expert, Dr. Rice, from testifying at trial. Dr. Rice's opinions are speculative, conjectural, and unreliable. AGS will be prejudiced if plaintiff is permitted to introduced Dr. Rice's opinions at trial to a jury. As such, AGS requests that the Court strike the Rice Report and exclude his opinions.

AGS further request that the Court grant this motion and prevent plaintiff from introducing evidence of economic losses unless presented in proper, admissible form and through a competent witness, from offering evidence of or argument about the amount of future economic damages not reduced to present value, and from offering lay opinion, and any evidence or argument based on or arising out of lay opinions, to support any contention regarding plaintiff's work capacities or work-life expectancy, or any calculation of damages or alleged wage loss.

        Respectfully submitted,

        */s/ Benjamin R. Slater, III*
        BENJAMIN R. SLATER, III, #12127
        ALEXANDER J. DEGIULIO, #38184
        **CHAFFE McCALL, L.L.P.**
        2300 Energy Centre
        1100 Poydras Street
        New Orleans, LA  70163-2300
        Telephone: (504) 585-7000
        Facsimile: (504) 544-6095
        Email:  benjamin.slater@chaffe.com
                alex.degiulio@chaffe.com

        **-AND-**

                                        Robert S. Hawkins, PA Bar No. 39862  
                                        Andrew J. Rolfes, PA Bar No. 78809  
                                        Cozen O'Connor  
                                        One Liberty Place  
                                        1650 Market Street  
                                        Suite 2800  
                                        Philadelphia, PA 19103  
                                        Telephone: (215) 665-2015  
                                        Facsimile: (215) 701-2098  
                                        Email:  rhawkins@cozen.com  
                                                    arolfes@cozen.com  

***Attorneys for Defendant,***  
***The Alabama Great Southern Railroad Company***

4657530-1