**KENNETH J. BOUDREAUX, Ph.D.**
**CONSULTING ECONOMIST**

1424 BORDEAUX STREET
NEW ORLEANS, LOUISIANA 70115
TELEPHONE: 504-895-8741
EMAIL: ken@kennethboudreaux.com
WEB SITE: www.kennethboudreaux.com

PROFESSOR EMERITUS
A. B. FREEMAN SCHOOL
TULANE UNIVERSITY

April 11, 2022

Mr. Benjamin R. Slater, III
Beirne, Maynard & Parsons
601 Poydras Street FL 21
New Orleans, LA 70130-6029

Re: Shaji Brown vs. The Alabama Great Southern Railroad Company

Dear Mr. Slater:

I have performed the analysis you requested in the above matter. This report should be considered preliminary in that new or revised data may cause me to undertake revisions, or that you may ask me to perform additional analyses. Though this report is generally phrased in the first person, the individuals listed below stand ready to testify as required by the litigation scheduling.

In producing this analysis I have relied on the following documents:

- A completed checklist of information submitted by your firm to me,

- The 3/15/22 report of G. Randolph Rice, Ph.D.,

- Pay records that appear to be from a railroad,

- Pay records from U.S. Express, Inc.

- The cited references in the text of my report.

This report should not be interpreted as my having an opinion as to the validity of any liability or legal positions taken by any party to this matter.

In reviewing the Rice report I have the following observations:

Case 2:21-cv-00843-LMA-MBN   Document 42-7   Filed 05/03/22   Page 2 of 3

Shaji Brown vs. The Alabama Great Southern Railroad Company

Mr. Slater
April 11, 2022
Page 2

- Mr. Brown's attorney instructed Professor Rice to assume Mr. Brown would work to age 65 (24.57 years as of event date), and by implication that this work would be with his railroad employer.

- There are statistical tables that address railroad worker worklife duration that are regularly used by economists (James E. Ciecka and Gary R. Skoog, "Worklife Expectancy of Railroad Workers Based on the *Twenty-Seventh Actuarial* Valuation Using Both Competing Risks/Multiple Decrement Theory and the Markov Railroad Model" *Journal of Forensic Economics*, 29(1), September 2020, p. 91-100 and supplemental data from the *JFE*  web site www.journalofforensiceconomics.com).  These tables indicate that a railroad worker with Mr. Brown's age and years of service would be expected to have 21 more years of railroad work.  Thus the instruction as to worklife that underlies the Rice report overstates Mr. Brown's railroad worklife by 3.57 years, and causes the Rice report's figures to be overstated and incorrect from that perspective.

- The Rice report indicates that it has deducted Mr. Brown's pay from U.S. Express during 2021  and that Professor Rice was instructed to assume that Mr. Brown was employable at $15.00 per hour ($31,200.00 per annum) from 3/17/20 and in the future.

- The U.S. Express records indicate that Mr. Brown earned a total of $7,126.80 from 9/29/21 to 11/2/21.  On an annual basis that figure is $77,746.91.  This is clearly inconsistent with an ability to earn $31,200.00 per annum as the Rice report was instructed to assume.

- The Rice report does not indicate a source for its assumptions as to Mr. Brown's ability to work after the event that is the subject of this litigation, other than Mr. Brown's attorney.  To the extent that there is evidence of any physical or mental inability  to pursue employment such as his prior railroad work, economists are typically presented expert opinion (such as vocational rehabilitation or medical opinion) as to any such disability, and instructed to rely on that opinion.  The Rice report does not mention any such source and is apparently guided in the vocational dimension only by instruction from Mr. Brown attorney.

- Given the information, including the Rice report and its accompanying documents, there would not be a basis for an economist to reach a conclusion that Mr. Brown has sustained an economic loss beyond the point when he was capable of returning to work, which he apparently has done.

- Parenthetically, I also observe that the Rice report produces an economic loss figure based on Mr. Brown's assumed fringe benefits with the railroad, without any apparent consideration of fringe benefits from alternative employment that Mr. Brown would use to offset the assumed loss of railroad fringe benefits.

I hope this analysis is of use to you.  Should you have questions, please do not hesitate to contact me.  Please list Dan M. Cliffe, J. Stuart Wood, John R. Page and myself, all of whom stand ready to testify, depending upon teaching schedules.  **Should additional information be required for**

Shaji Brown vs. The Alabama Great Southern Railroad Company

Mr. Slater
April 11, 2022
Page 3


**filing this report (e.g. a CV, case listing, testimony histories, fees, etc.) it is available at www.kennethboudreaux.com.**  Please keep me informed of progress toward trial.


Sincerely,

*[signature]*

Kenneth J. Boudreaux, Ph.D.
Dan M. Cliffe, CPA
J. Stuart Wood, Ph.D.
John R. Page, Ph.D., CPA


KJB/del

Attachment