UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHAJI BROWN | CIVIL ACTION |
| VERSUS | No. 21-843 |
| ALABAMA GREAT SOUTHERN RAILROAD COMPANY | SECTION I |

## ORDER & REASONS

Defendant, Alabama Great Southern Railroad Company ("Alabama Railroad"), has filed a motion[1] *in limine* to exclude the testimony of Dr. G. Randolph Rice ("Rice"), an economist and proposed expert on behalf of plaintiff, Shaji Brown ("Brown"). If the Court does exclude Rice's testimony, Alabama Railroad also requests that the Court broadly preclude Brown from offering evidence of economic damages at trial.[2] Brown opposes[3] the motion. For the following reasons, the Court will defer ruling on the motion until trial.

### I.  BACKGROUND

According to his complaint, Brown was employed by Alabama Railroad as a freight conductor.[4] On June 28, 2020, Brown alleges that he was injured while working at the Oliver Yard station in New Orleans when another rail car collided with the rail car that Brown was servicing.[5] As a result of the collision, Brown claims

---

[1] R. Doc. No. 42 (motion); R. Doc. No. 51 (reply memorandum).
[2] R. Doc. No. 42-1, at 10–12.
[3] R. Doc. No. 48.
[4] R. Doc. No. 1, at 2.
[5] *Id.*

that he suffered injuries to his neck, lower back, and lumbar spine.[6] Brown further alleges that he has required continued medical treatment for his back injuries.[7]

Brown filed a complaint pursuant to the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51, *et seq*.[8] Brown also claims that he was discharged in retaliation for reporting the incident in which he was injured in violation of the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109, *et seq*.[9] Among other relief, Brown seeks recovery for his lost wages, fringe benefits, and unpaid medical expenses.[10]

After his termination at Alabama Railroad, Brown began working as a truck driver for U.S. Express, Inc. ("U.S. Express").[11] At his deposition, Brown testified that he worked "between 40 and probably 60" hours a week for U.S. Express.[12]

During the discovery period, Brown's counsel disclosed Rice as an expert witness pursuant to Federal Rule of Civil Procedure 26(a)(2)(B).[13] Rice provided an expert report in the form of a letter, dated March 15, 2022.[14] Rice's letter summarizes the calculations that he performed in connection with Brown's past and future lost economic losses.[15]

---

[6] *Id*.
[7] *Id*. at 3.
[8] *Id*.
[9] R. Doc. No. 7.
[10] R. Doc. No. 1, at 3.
[11] R. Doc. No. 42-4, at 4.
[12] *Id*. Brown's deposition was taken on October 28, 2021. On that date, Brown had been working for U.S. Express for roughly a month. *Id*. at 1, 4.
[13] *Id*. at 4.
[14] R. Doc. No. 42-6.
[15] *Id*. at 1–3.

Rice's letter first notes the materials that Rice considered when performing his calculations.[16] These materials include Brown's 2019 and 2020 wage information, Alabama Railroad's fringe benefit information, Brown's pay stubs for his new job at U.S. Express, and Alabama Railroads' responses to interrogatories.[17]

Rice's letter also notes certain assumptions that Rice made when performing his calculations.[18] Those assumptions include that Brown would continue working until the age of sixty-five, and that after his injuries Brown would be employed earning $15.00 per hour while working forty hours a week.[19]

With respect to Brown's future earning capacity, Rice began by calculating the discounted present value of Brown's future after-tax earning capacity (absent injury).[20] Next, as an "example," Rice calculated the discounted present value of Brown's future after-tax earning capacity based on various assumed circumstances.[21] Rice then compared his two projections (that is, the discounted present value of Brown's future after-tax earning capacity with and without injury) and calculated Brown's net future discounted diminution of earnings to be $327,439.00.[22]

---

[16] *Id.* at 1.
[17] *Id.* at 1.
[18] *Id.* at 1
[19] *Id.* at 1–2.
[20] *Id.* at 2.
[21] *Id.* Rice calculated the discounted value of future after-tax earning capacity (with injury) based on the assumption that Brown would earn $15.00 per hour over a 40 hour week until the age of 65. *Id.* at 1–2.
[22] *Id.* at 2. Rice's report also quantified the value of Brown's past after-tax lost wages, the present value of future composite fringe benefits under Alabama Railroad's insurance policies, and the present value of Alabama Railroad's contributions to Brown's retirement plan using similar assumptions. *Id.* at 2–3.

Overall, Alabama Railroad makes two arguments. First, Alabama Railroad seeks to exclude "the opinions and report of [Brown's] purported economic expert, [Rice]."[23] Second, Alabama Railroad contends that "[w]ithout Rice's report, any evidence of [Brown's] alleged economic losses is not in proper form under the FELA and any lay opinion on damages must be excluded."[24] The Court addresses these arguments in turn.

## II. STANDARD OF LAW

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)).

---

[23] R. Doc. No. 42-1, at 1.
[24] R. Doc. No. 42-1, at 10.

4

*Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires a trial court to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire*, 526 U.S. at 147.

A number of nonexclusive factors may be considered with respect to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the technique's potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'" (quoting *Kumho Tire*, 526 U.S. at 152)). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

As for determining relevancy, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [under Rules 401 and 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702, Advisory Committee Note).

"[W]hen expert testimony is challenged under Rule 702 and *Daubert*, the burden of proof rests with the party seeking to present the testimony." *Kennedy v. Magnolia Marine Transp. Co.*, 189 F. Supp. 3d 610, 615 (E.D. La. 2016) (Africk, J.). The Court applies a preponderance of the evidence standard when performing its gatekeeping function under *Daubert*. *See Daubert*, 509 U.S. at 592 n.10. And the Court is not bound by the rules of evidence—except those rules concerning privileges—when doing so. *See id*.

### III.   ANALYSIS

#### A.   Alabama Railroad's argument concerning Rice's report

Alabama Railroad contends that Rice's opinion regarding Brown's future lost earning capacity is inadmissible.[25] It argues that when making his calculations, Rice

---

[25] R. Doc. No. 42-1, at 6–9.

6

simply assumed the age at which Brown would stop working, the wage that Brown would be able to earn in the future, and the number of hours that Brown would work per week without pointing to any evidence to support those assumptions.[26]

"In *Culver v. Slater Boat Co.*, 722 F.2d 114 (5th Cir. 1983) (en banc), the Fifth Circuit set forth an approved methodology for determining future lost wage calculations[.]" *Naquin v. Elevating Boats, LLC*, No. 10-4320, 2012 WL 1664257, at *5 (E.D. La. May 11, 2012) (Barbier, J.). "The four-step process established by *Culver* requires (1) estimation of the loss of work-life resulting from the plaintiff's injury; (2) calculation of the plaintiff's lost income stream; (3) computation of the total amount of damages; and (4) discounting the total amount to its present value." *Id.* (citing *Culver*, 722 F.2d at 117).

1. Work-Life Expectancy

The first step of the *Culver* process is at issue because Alabama Railroad contests Rice's assumption as to Brown's work-life expectancy.[27] With regard to that step, the Fifth Circuit has established that work-life expectancy should be determined using statistical averages in the absence of evidence supporting a deviation. *Madore v. Ingram Tank Ships, Inc.*, 732 F.2d 475, 478 (5th Cir. 1984). As the Court explained in *Madore*: "Such an average is not conclusive. It may be shown by evidence that a particular person, by virtue of his health or occupation or other factors, is likely to live and work a longer, or shorter, period than the average. Absent such evidence,

---

[26] *Id.*
[27] R. Doc. No. 42-1, at 8–9.

however, computations should be based on the statistical average." *Id.*; *see also Randolph v. Laeisz*, 896 F.2d 964, 968 (5th Cir. 1990) (same).

"Self-serving" testimony by the plaintiff that he "intended" to work beyond the statistical norm is insufficient by itself to demonstrate by a preponderance of the evidence that the plaintiff is likely to live and work longer than the average. *Naquin*, 2012 WL 1664257, at *6 (citing *Lambert v. Teco Barge Line*, No. 06–2390, 2007 WL 2461681, at *3 (E.D. La. Aug. 23, 2007)). In *Barto v. Shore Const., L.L.C.*, for example, the Fifth Circuit observed:

> [The plaintiff]'s economist did not provide any reason to believe that [he] would continue to work past his statistical work-life expectancy. The only relevant evidence [the plaintiff] presented at trial was his testimony that he plans to work "[a]s long as I can retire. Whatever the retirement age is." This scant evidence was not enough to show that [he] "by virtue of his health or occupation or other factors, is likely to live and work a longer, or shorter, period than the average." *Madore*, 732 F.2d at 478.

801 F.3d 465, 475 (5th Cir. 2015). Accordingly, expert testimony predicated only on the plaintiff's mere subjective belief or unsupported speculation regarding future lost earnings should be excluded. *Lewis v. Seacor Marine, Inc.*, No. 02-116, 2002 WL 34359733, at *2 (E.D. La. Oct. 23, 2002) (Engelhardt, J.); *Lambert*, 2007 WL 2461681, at *3. On the other hand, calculations of future lost earnings beyond the average may proceed to trial where the plaintiff expresses an intention to introduce suitable evidence at trial and where the record might conceivably support the introduction of such evidence. *Naquin*, 2012 WL 1664257, at *6.

Rice's report acknowledges that Brown's counsel requested that Rice use a work-life expectancy age of 65.[28] Brown's opposition likewise states that "[c]ounsel requested that [Rice] assume a work life expectancy to the age of 65."[29] Brown argues that "[t]he assumption provided is realistic."[30] Ultimately, Brown contends that "the jury is well equipped to determine the issue of work life expectancy based on evidence, testimony, and common sense."[31]

Based on the record before the Court, Brown does not identify what, if any, evidence supports the assumption that Brown would work until the age of 65. Nevertheless, the Court cannot at this time definitively state that Brown will be unable to introduce any evidence at trial regarding his health, occupation, or other factors—such as an appropriate statistical average—that would support Rice's assumption concerning Brown's work-life expectancy. In this posture, Brown's vague argument weighs in favor of deferring the motion until trial.

### 2. Earning Capacity

With respect to Brown's earning capacity, Rice's report also states that Rice reviewed Brown's 2019 and 2020 wage data, Brown's complaint, and Brown's pay stubs with U.S. Express in forming his opinions.[32] But Rice's report does not

---

[28] R. Doc. No. 42-6, at 1. Rice's report does not state that Brown's counsel obtained this work-life expectancy age from any authority like an actuarial table or a statistical average from the United States Department of Labor. *Id.*
[29] R. Doc. No. 48, at 9.
[30] *Id.*
[31] *Id.*
[32] *Id.* Alabama Railroad also maintains that "Brown has not offered any evidence, from a vocational rehabilitation expert, life care planner, or medical practitioner, regarding his claimed disability or ability to earn money." *See* R. Doc. No. 42-1, at 9.

9

explicitly explain how, and on what basis, each of these sources of information provide a foundation for his assumption that, in the future, Brown will be capable of earning $15.00 an hour over a forty-hour work week.[33]

Without more information as to Brown's work-life expectancy and more information as to Rice's future earning capacity calculations, this Court cannot at this stage rule on the admissibility of Rice's testimony. *See, e.g.*, *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 516 (5th Cir. 2013) ("[E]xpert testimony that relies on completely unsubstantiated factual assertions is inadmissible.") (internal quotation marks and citation omitted); *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) (observing that an expert's opinion cannot "be nothing but his incorrect factual assumptions based on examination of incomplete records."); *Mayne v. Omega Protein,*

---

Brown argues, *see* R. Doc. No. 48, at 5, that a vocational rehabilitation expert is not required to support a claim of lost future earnings, referencing *Barocco v. Ennis, Inc.*, 100 F. App'x 965 (5th Cir. 2004) (per curiam). *Barocco*—a nonprecedential Fifth Circuit opinion—is not controlling here because it addressed *Louisiana* law, not federal law. *Id.* at 967–968. Moreover, the Fifth Circuit panel that issued the opinion based its conclusion on the specific testimony offered at trial—testimony that the panel did not discuss in detail in its opinion. *Id.* at 969. "In any event, the Court is not stating that a plaintiff can prove his claim for future lost wages only if a vocational or rehabilitation expert testifies." *Associated Terminals v. Potential Shipping HK Co.*, 324 F. Supp. 3d 808, 834 n.108 (E.D. La. 2018) (Africk, J.). But a plaintiff must prove the value of post-accident earning capacity by a preponderance of the evidence. *Id.* at 834.

[33] Brown's deposition was taken in October 2021, and Rice's report is dated March 15, 2022. *See* R. Doc. Nos. 42-4, at 1; 42-6, at 1. Brown, who bears the burden of proving that Rice's expert testimony is admissible, has not addressed whether Brown is still working "[b]etween 40 and probably 60" hours for U.S. Express, *see* R. Doc. No. 42-4, at 4, or whether Brown is working some other schedule, or if he is now employed elsewhere. All of this information would be pertinent to understanding Brown's earning capacity following his discharge from Alabama Railroad and the basis for Rice's calculations.

*Inc.*, 370 F. App'x 510, 517 (5th Cir. 2010) (vacating an award of past and future lost wages based on Rice's calculations when "[n]o evidence supports [Rice's] assumption.").[34] Out of an abundance of caution, the Court will defer resolution of this motion until trial.

### B.   Alabama Railroad's argument concerning expert testimony

Alabama Railroad also contends that "[w]ithout Rice's report, any evidence of [Brown's] alleged economic losses is not in proper form under the FELA and any lay opinion on damages must be excluded."[35]

In general, Alabama Railroad is correct that awards for lost future earnings should be reduced to present value. *O'Byrne v. St. Louis Sw. Ry. Co.*, 632 F.2d 1285, 1286 (5th Cir. 1980); *St. Louis Sw. Ry. Co. v. Dickerson*, 470 U.S. 409, 411–412 (1985). But in Alabama Railroad's referenced cases, the Fifth Circuit's discussion of expert testimony concerned the appropriate rate to use in performing the present value calculation.

The Fifth Circuit has explained that "[i]f [the parties] are unable to [reach a stipulation], they may introduce expert opinion concerning the appropriate rate." *Culver*, 722 F.2d at 122 (1983). Further, "[u]nder the [Supreme] Court's FELA cases,

---

[34] Alabama Railroad also argues that Brown disclosed in discovery "that he received [Veterans Affairs] [b]enefits during the last ten years. These benefits are not included in [Rice's] opinion." *See* R. Doc. No. 42-1, at 7. Brown argues that "these [Veterans Affairs] benefits are inadmissible collateral source payments, which are not relevant to [Rice's] calculations." *See* R. Doc. No. 48, at 8. The parties have not provided sufficient factual information or legal argument which would permit the Court to determine whether Brown's Veterans Affairs benefits are relevant and admissible.
[35] R. Doc. No. 42-1, at 10.

11

the jury has the task of making the present value determination." *Monessen Sw. Ry. Co. v. Morgan*, 486 U.S. 330, 340 (1988). The Fifth Circuit has addressed this issue and held that:

> [W]e believe that it is decidedly the better practice to present the jury with either expert mathematical testimony or actuarial tables to aid it in its task of reducing gross future lost earnings to their present value. Nothing in our opinion should be read as discouraging attorneys or the court from affording the jury as much guidance in this respect as is reasonable. We hold only that such actuarial and mathematical evidence is not an absolute prerequisite to the submission of an instruction on lost future wages when evidence of such a loss has been presented.

*Bonura v. Sea Land Service, Inc.*, 505 F.2d 665, 669 (5th Cir. 1974); *see also Johnson v. Lopez-Garcia, et al.*, No. 20-2024, 2021 WL 3630109, at *3 (E.D. La. Aug. 17, 2021) (Lemmon, J.) ("[A]n economic expert is not an absolute prerequisite to recover future damages.") (citing *Bonura*, 505 F.2d at 669); *Franchina v. City of Providence*, 881 F.3d 32, 59 (1st Cir. 2018) ("None [of our sister circuits] have concluded that expert testimony on reduction to present day value is a mandatory prerequisite for an award of future earnings.") (citing *Bonura* and collecting cases from the Third, Sixth, Seventh, Eighth, and Ninth Circuits).

As the Court defers the decision on whether to exclude, in whole or in part, Rice's opinions until trial, this issue may ultimately be moot. Nevertheless, Alabama Railroad's broad argument that expert testimony is a necessary prerequisite to recover lost future wages is unpersuasive.[36]

---

[36] Brown also disclosed the identities of his treating physicians, Dr. Barnett Johnston ("Johnston") and Dr. Lacie Alfonso ("Alfonso"), and the expected opinions those doctors could offer at trial pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). *See* R. Doc. No. 42-5, at 3–4. With respect to both Johnston's and Alfonso's opinions

## IV. CONCLUSION

For all the foregoing reasons,

**IT IS ORDERED** that Alabama Railroad's motion[37] *in limine* is **DEFERRED** until trial as set forth above.

**IT IS FURTHER ORDERED** that Brown shall submit supplemental briefing with respect to the evidence he would offer at trial regarding his work-life expectancy if Rice is not permitted to testify as to that issue. Brown shall submit this supplemental briefing no later than **JUNE 15, 2022**, and Alabama Railroad shall respond by **JUNE 20, 2022**.[38]

New Orleans, Louisiana, June 9, 2022.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

regarding "work and physical restrictions," Brown's expert disclosure states that "Brown will need a present condition evaluation." *Id.* Alabama Railroad maintains that such an evaluation did not occur before the close of discovery, and therefore Johnston and Alfonso should not offer an opinion on Brown's work or physical restrictions at trial. *See* R. Doc. No. 51, at 2. Brown's counsel has not argued that Johnston or Alfonso would offer such an opinion. *See* R. Doc. No. 48, at 7–9. To the extent that an issue arises at trial with respect to the scope of a doctor's testimony, the Court will confront that issue at trial.

[37] R. Doc. No. 44.

[38] Alabama Railroad argued that expert testimony as to work-life expectancy is necessary and that Brown has not identified any witness who may testify to his work-life expectancy. *See* R. Doc. No. 42-1, at 11. But Alabama Railroad only offered the plain text of Rules 701 and 702 of the Federal Rules of Evidence without referencing any authority specifically discussing work-life expectancy and lost future wages.